IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WARREN J. WYANT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 02-1346 GMS |
| | ) | |
| CORRECTIONAL MEDICAL SERVICES, | ) | |
| MICHELLE ROBINSON, JUANITA CLARK | ) | |
| JOHN DOE, TOM CARROLL, | ) | |
| ELIZABETH BURRIS, LARRY McGUIGAN, | ) | |
| ROBERT SNYDER, CHARLES CUNNINGHAM, | ) | |
| LEO BOYLE and C/O STEVENSON, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## **MEMORANDUM**

## I.        INTRODUCTION

Plaintiff, Warren J. Wyant ("Wyant") filed this *pro se* civil rights action on August 1, 2002,

pursuant to 42 U.S.C. § 1983.  The complaint alleges that Correctional Medical Services ("CMS")[1],

Michelle Robinson ("Robinson"), Juanita Clark, ("Clark"), John Doe ("Doe")[2], Robert Snyder

("Snyder"), Tom Carroll ("Carroll"), Elizabeth Burris ("Burris"), Larry McGuigan ("McGuigan"),

Major Charles Cunningham ("Cunningham"), Leo Boyle ("Boyle"), and Correctional Officer

Stevenson ("Stevenson")[3], violated Wyant's First, Fourth, Sixth, Eighth, and Fourteenth Amendment

---

[1] CMS' motion to dismiss Wyant's complaint, converted by the court into a motion for summary judgment, was granted on September 29, 2004.

[2] The court issued an Order (D.I. 64) on September 7, 2005, dismissing Wyant's claims against Doe for failure to prosecute, pursuant to District of Delaware Local Rule 41.1.

[3] As Wyant voluntarily dismissed his First, Fourth, and Sixth Amendment claims against Stevenson in his opposition memorandum, the court will not consider these allegations further. (*See* D.I. 52 ¶ 35.)

rights. Wyant is seeking both punitive and compensatory damages from the defendants.

Presently before the court is a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Snyder, Carroll, Burris, McGuigan, Cunningham, and Boyle (collectively, the "defendants"). For the following reasons, the court will grant the motion to dismiss Wyant's claims against Snyder, Carroll, McGuigan, Cunningham, and Boyle. Additionally, the court will deny the motion to dismiss Wyant's claims against Burris.

## II.   BACKGROUND

Wyant filed this action on August 1, 2002, alleging civil rights violations pursuant to 42 U.S.C. § 1983. According to the complaint (D.I. 2), on July 26, 2000, Burris issued and distributed a memorandum to the Delaware Correctional Center ("DCC") staff, warning them not to drink the water, even if boiled, because unsafe bacteria levels were found in the prison's water source. (D.I. 2 ¶¶ 53-54.) Burris, however, allegedly failed to warn the prisoners about the potential risk. On August 8, 2000, another memorandum was posted around the prison, informing "all concerned" that the water was safe for use. (D.I. 52 ¶ 13.) The complaint alleges that Burris knew of the substantial risk of harm to Wyant, and deliberately failed to warn him of the dangerous water conditions. (*Id.* ¶ 57.)

Wyant next claims that he was punitively classified to solitary confinement based on inaccurate information in his prison file, which contained past disciplinary actions and erroneous allegations of his membership in a gang. (*Id.* ¶¶ 76, 89-94.) Wyant alleges that during his five months in solitary confinement, he was limited to three forty-five minute periods of exercise per week, the light in his holding cell was on for only five hours each day, and he was denied access to personal hygiene products. (*Id.* ¶¶ 60-61, 72, 114-24.) Wyant claims that he notified the defendants

2

about the false information in his file, appealed his classification, and exhausted all other administrative procedures. According to Wyant, the defendants neither gave him a response nor made any correction to the erroneous information. (*Id.* ¶¶ 68,70, 92-93, 95, 98, 124.)

Wyant further claims that he was constructively denied access to the courts due to the DCC satellite law library's "paging system," which requires prisoners to request cases that are then delivered through the mail system within fourteen days of the request. (*Id.* ¶ 125.) The complaint alleges that this system precluded Wyant from conducting meaningful legal research because he did not have access to research materials, was required to recite cases from memory, and experienced a delay in receiving the requested materials. (*Id.* ¶¶ 125-137.)

On August 1, 2002, Wyant filed a complaint with this court. The defendants subsequently filed a motion to dismiss on February 25, 2005. The defendants maintain that the court should dismiss this case for failure to state a claim and because the doctrines of qualified and sovereign immunity are bars to liability.[4] Wyant timely filed a response, opposing the defendants' motion to dismiss on April 12, 2005. As of the date of this memorandum, no discovery has been conducted in this case.

## III.        STANDARD OF REVIEW

Federal Rule of Civil Procedure 12 (b)(6) authorizes a court to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of a motion to dismiss is to test the sufficiency of a complaint not to resolve disputed facts or decide the merits of the case. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In considering a motion to

---

[4] The court will not address the defendants' sovereign immunity argument, as Wyant's opposition memorandum voluntarily dismissed all claims against the defendants in their official capacities. (D.I. 52 ¶ 38.)

dismiss, the court must accept as true all allegations in the complaint and must draw all reasonable factual inferences in the light most favorable to the plaintiff. *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990). The court will only dismiss a complaint if " it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (citation omitted). Thus, the moving party bears the burden of demonstrating "beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Additionally, *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Conley*, 355 U.S. at 45-46).

In the instant case, although the defendants filed a motion to dismiss, they attached an extensive appendix to their submission, containing materials outside of the pleadings, including copies of affidavits, internal memoranda, public notices, and Wyant's disciplinary records. It should be noted, however, that the court is not relying on matters outside the pleadings to decide this motion. Thus, it is not proper to convert the motion from a motion to dismiss into one for summary judgment. *See* Fed. R. Civ. P. 12(b) (If, in a motion to dismiss for failure to state a claim, "matters outside the pleading are presented to *and not excluded by the court*, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. . . .") (emphasis added). Additionally, the court will use the motion to dismiss standard to address Wyant's claims because "it would be inappropriate to convert the [defendants'] motion[s] to dismiss into motion[s] for summary judgment pursuant to Fed. R. Civ. P. 12(b), since there has been no discovery conducted

4

in the present case." *Brug v. The Enstar Group, Inc.*, 755 F. Supp. 1247, 1251 (D. Del. 1991); *see Melo v. Hafer*, 912 F.2d 628, 634 (3d Cir. 1990); *Ospina v. Dep't of Corr.*, 749 F. Supp. 572, 574 (D. Del. 1990). The court, therefore, will review only the pleadings.

## IV.    DISCUSSION

Wyant's complaint arises under 42 U.S.C § 1983, alleging Fifth, Eighth, and Fourteenth Amendment violations by the Defendants. In order to prevail on a § 1983 claim, a plaintiff must show: (1) that the defendant acted under color of state law; and (2) that the defendant deprived plaintiff of a federally secured right. 42 U.S.C. § 1983. Because, "it is well established that prison officials acting in their official capacities are acting under color of state law," the only remaining question for the court to consider is whether the defendants' actions deprived Wyant of his constitutional rights. *Parratt v. Taylor*, 451 U.S. 527, 535-36 (1981). In conditions of confinement cases, the requisite state of mind is one of "deliberate indifference" to a substantial risk of serious harm to inmate's health and safety. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). The Supreme Court has held that deliberate indifference is established where a prison official "knows of and disregards an excessive risk to inmate health or safety." *Id.* at 834.

Wyant alleges that the defendants have acted with deliberate indifference in violating his Fifth, Eighth, and Fourteenth Amendment rights. In support of their motion to dismiss, the defendants raise two arguments: (1) the plaintiff has failed to demonstrate a deprivation, and a deliberate indifference on the part of the state defendants; and (2) the defendants are entitled to qualified immunity on all counts of the plaintiff's complaint. With the above standards in mind, the court will now evaluate the facts supporting Wyant's claims under 42 U.S.C. § 1983, and the defendants' immunity argument.

5

## A.    Whether Wyant's Claims Under 42 U.S.C. § 1983 Should Be Dismissed

1.    Wyant's Eighth and Fourteenth Amendment Claims Against Burris

The complaint alleges that Burris, the acting warden at the DCC, violated Wyant's Eighth and Fourteenth Amendment rights[5] by deliberately withholding knowledge from the prisoners that DCC's water source tested positive for high levels of bacteria, thereby exposing Wyant and the other inmates to a health hazard. Burris allegedly distributed a memorandum to the staff warning them about the toxic bacteria levels and advising them to seek alternate sources of water. Wyant claims that Burris knowingly and deliberately failed to warn the inmates about the water conditions, and that her failure constitutes a deliberate indifference to his health and safety.

The defendants assert that the record is insufficient to allow a reasonable jury to find that Burris was deliberately indifferent to Wyant's health and safety. The defendants contend that the water was never in a "toxic" condition; that a memorandum to "all concerned" was issued and circulated within the facility to both personnel and inmates, notifying them about the water conditions; and that everyone was assured that the drinking water was safe. (D.I. 49, at 3.) Furthermore, the defendants argue that Wyant's claim fails because he alleges no actual injury, but merely an alleged risk of harm.

Considering the allegations in the light most favorable to plaintiff, the court cannot conclude at this juncture that Wyant's allegations fail to state a claim. Wyant should have the opportunity to engage in discovery and obtain all relevant memoranda and documents that may support his claim. Indeed, as Wyant's opposition memorandum points out, the defendants have attached affidavits and

---

[5] Although later voluntarily dismissed by Wyant, the complaint also alleged that Burris violated Wyant's First Amendment rights by censoring certain publications.

6

memoranda in support of their motion to dismiss this claim, but they have not included a copy of the July 26, 2000 memorandum. (D.I. 52, at 5-6.) Furthermore, the defendants' assertion that actual injury is necessary in order to establish deliberate indifference is incorrect. The Supreme Court has held that a prisoner's Eighth Amendment claim could be based upon possible future harm to health. *Helling v. McKinney*, 509 U.S. 25, 35 (1993). For these reasons, the court will deny the defendants' motion to dismiss this claim.

2.      Wyant's Eighth Amendment Claim Against Snyder, Carroll, McGuigan, and Cunningham

The complaint alleges that defendants Snyder, Carroll, McGuigan, and Cunningham violated Wyant's Eighth Amendment right by authorizing policies that deprived him of basic human necessities such as adequate lighting, exercise, and personal hygiene products. According to Wyant, his prison cell's only source of light is a window during the day, and at night the cell lights are only activated from 5pm to 10pm. (D.I. 2 ¶ 72.) Wyant also claims that the three forty-five minute periods of shower/exercise time per week constitute inadequate exercise. The complaint further alleges that inmates are unable to buy or use scented soap, shampoo, and lotion. Wyant claims that the defendants were deliberately indifferent to his personal needs and that, as a result, he suffered emotional and physical injuries including muscle atrophy, physical deterioration, and depression. (*Id.* ¶ 65.)

The defendants respond that although the prison conditions are restrictive, the regulations are necessary for rehabilitation. According to the defendants, all Security Housing Unit[6] ("SHU") inmates are permitted three showers per week, forty-five minutes of exercise at least three times a

_____

[6] The SHU is the maximum security unit of the DCC. This unit houses inmates who have had disciplinary issues in the lower security units.

week, and are provided free personal hygiene necessities on a weekly basis. The defendants further

assert that Wyant's allegations fail to establish a sufficiently serious deprivation that rises to the level

of an Eighth Amendment violation.

The Eighth Amendment applies to the states through the Fourteenth Amendment, and

prohibits the infliction of "cruel and unusual punishment" on those convicted of crimes. *Robinson

v. California*, 370 U.S. 660, 666 (1962). The Constitution, however, does not mandate comfortable

conditions in prisons, and only those deprivations that deny "the minimal civilized measure of life's

necessities" are sufficiently grave to constitute an Eighth Amendment violation. *Wilson v. Seiter*,

501 U.S. 294, 298 (1991) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Some prison

conditions may amount to an Eighth Amendment violation in combination when each would not do

so alone, but only if they have a "mutually enforcing effect that produces the deprivation of a single,

identifiable human need such as food, warmth, or exercise." *Wilson*, 501 U.S. at 304. However, the

lack of exercise only rises to a constitutional level "where movement is denied and muscles are

allowed to atrophy, [and] the health of the individual is threatened . . . ." *Ellegood v. Taylor*, No.

Civ. A. 01-213-SLR, 2002 WL 449758, at *4 (D. Del. Mar. 18, 2002) (quoting *Frazier v. Ward*, 426

F. Supp. 1354, 1367-69 (N.D.N.Y. 1997)). In the instant case, Wyant has not made any allegations

of inadequate food, shelter, and clothing. He also acknowledges that he receives at least thirty

minutes of exercise time, three days per week. Although this may not be ideal to Wyant, it is not a

sufficiently significant deprivation to constitute an Eighth Amendment violation. *See Renn v.

Taylor*, No. Civ. A. 99-765-SLR, 2001 WL 657591, at *3 (D. Del. Mar 2, 2001) (finding that one

hour per week of exercise did not amount to a constitutional deprivation). The prison conditions

alleged in the complaint do not establish a constitutional violation because, even when combined,

8

they do not deprive Wyant of an identifiable human need. Accordingly, the court will grant the defendants' motion to dismiss this claim.

      3.      Wyant's Fifth and Fourteenth Amendment Equal Protection and Due Process Claims Against Boyle, Carroll, McGuigan, and Cunningham

Wyant claims that defendants Boyle, Carroll, McGuigan, and Cunningham violated his Fifth and Fourteenth Amendment equal protection and due process rights, by arbitrarily classifying him to the SHU. As previously discussed, the complaint alleges that Wyant was misclassified to SHU housing due to erroneous information contained in his file. Wyant claims he filed internal appeals and grievances notifying Carroll and other officials of the inaccuracies in his record, in response to which, he alleges, the defendants failed to act. Wyant further asserts that the defendants acted with deliberate indifference to his constitutional rights when they placed him in a "punitive segregation" environment without affording him due process protections. (D.I. 2 ¶ 98.)

The defendants deny the allegations and contend that Wyant's classification was neither arbitrary nor punitive. Instead, the defendants maintain that the SHU's Quality of Life[7] program consists of various levels through which an inmate progresses as he gains more privileges. (D.I. 49, at 8.) According to the defendants, Wyant was transferred to SHU due to his continued behavioral disruptions that led to monthly write-ups. (*Id.*) Furthermore, the defendants assert that, while in SHU, Wyant received the same treatment and lived under the same conditions as other SHU inmates.

---

[7] The Quality of Life Program provides various levels to SHU inmates, through which they progress as they work toward classification back to the general prison population.

9

Analysis of a due process claim begins with determining whether a constitutionally protected liberty interest exists. *See Sandin v. Conner*, 515 U.S. 472 (1995). "Liberty interests protected by the Fourteenth Amendment may arise from two sources, the Due Process Clause itself and the laws of the States." *Hewitt v. Helms*, 459 U.S. 460, 466 (1983), *overruled in part by Sandin v. Conner*, 515 U.S. 472 (1995); *Bd of Regents v. Roth*, 408 U.S. 564, 575 (1972). In *Sandin*, the Court explained that liberty interests under the due process clause are limited to "freedom from restraint" that imposes "atypical and significant hardship in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483. In determining whether an inmate has suffered an "atypical and significant hardship" as a result of his confinement, the court considers two factors: "1) the amount of time the prisoner was placed into disciplinary segregation, and 2) whether the conditions of his confinement in disciplinary segregation were significantly more restrictive than those imposed on other inmates in solitary confinement." *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000) (citing *Sandin*, 515 U.S. at 486). Additionally, given the circumstances surrounding inmate transfers to high security facilities, stays of several months are not uncommon. *See Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997) (finding that a 15 months period of administrative custody "falls within the expected parameters of the sentence imposed . . . by a court of law").

Wyant was removed from general population and classified to SHU due to several alleged disciplinary problems. In the complaint, Wyant has not pointed to anything that shows he was treated differently than other inmates during his five month confinement in SHU. Thus, the court cannot conclude that Wyant suffered an "atypical and significant hardship" as a result of his classification to SHU. Furthermore, Delaware district courts have repeatedly determined that the

10

Department of Correction statutes and regulations do not provide prisoners with liberty or

property interests protected by the due process clause. *Carrigan v. State of Delaware*, 957 F.

Supp. 1376, 1386 (D. Del. 1997) (holding that a prisoner has no constitutionally protected

interest in a particular classification); *Jackson v. Brewington-Carr,* No. Civ. A. 97-270-JJF, 1999

WL 27124, at * 2 (D. Del. Jan. 15, 1999) (finding that the court has repeatedly held that statutes

and regulations governing the Delaware prison system do not provide inmates with a liberty

interest in remaining free from administrative segregation or from a particular classification, and

citing cases). Consequently, Wyant's due process claim has no arguable basis in law or in fact.

As such, the court will grant defendants' motion to dismiss this claim.

    4.      Wyant's First Amendment, Equal Protection and Due Process Claims Against
                Snyder, Carroll, McGuigan and Cunningham

      As previously stated, the complaint alleges that Snyder, Carroll, McGuigan, and

Cunningham violated Wyant's constitutional right to meaningful access to the courts by

promulgating and operating the satellite law library. Wyant claims that the satellite library

system deprived him of access to competent paralegals and adequate legal materials. Moreover,

he asserts that the defendants exposed him to prejudice and injury for a prolonged period of time,

and deliberately precluded him from seeking redress in the courts.

      It is well established that prisoners retain their constitutional right of access to the courts.

*Kershner v. Mazurkiewicz*, 670 F.2d 440, 443-44 (3d Cir. 1981) (quoting *Bounds v. Smith*, 430

U.S. 817, 821 (1977)). There is, however, an "actual injury" requirement, *i.e.* an "instance in

which an inmate was actually denied access to the courts," in prisoner claims for denial of access

to courts. *Hudson v. Robinson*, 678 F.2d 462, 466 (3d Cir. 1982). In this case, Wyant alleges

11

that he was prejudiced by the use of the satellite library, but fails to allege what prejudice he suffered, or that he suffered any actual injury. Accordingly, the court will dismiss this claim.

## B.      Whether the Defendants Are Entitled To Qualified Immunity

In support of their motion to dismiss, the defendants also raise, in the alternative, the defense of qualified immunity. The qualified immunity doctrine provides that government officials performing discretionary functions, are shielded from liability so long as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity, therefore, does not apply if "reasonable officials in the defendant's position at the relevant time could have believed, in light of what was in the decided case law, that their conduct would be unlawful." *Good v. Dauphin County Soc. Servs. for Children & Youth*, 891 F.2d 1087, 1092 (3d Cir. 1989). In the present case, Wyant claims that "the defendants knew or should have known that their acts or failure to act violated his constitutional rights. . . ." (D.I. 52 ¶ 40.) Thus, at this stage of the proceedings, prior to the beginning of discovery, the court is not inclined to dismiss Wyant's claims against Burris. Accordingly, the court will defer ruling on the issue of qualified immunity at this time.

Dated: November __1__ , 2005

UNITED STATES DISTRICT JUDGE



FILED

NOV 1 2005

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

12

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

WARREN J. WYANT,                          )
                                          )
            Plaintiff,                    )
      v.                                  )        Civil Action No. 02-1346 GMS
                                          )
CORRECTIONAL MEDICAL SERVICES,            )
MICHELLE ROBINSON, JUANITA CLARK          )
JOHN DOE, TOM CARROLL,                    )
ELIZABETH BURRIS, LARRY McGUIGAN,         )
ROBERT SNYDER, CHARLES CUNNINGHAM,        )
LEO BOYLE and C/O STEVENSON,              )
                                          )
            Defendants.                   )
                                          )

## ORDER

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY

ORDERED that :

1.     The state defendants' Motion to Dismiss for Failure to State a Claim (D.I. 47) is

       GRANTED in part and DENIED in part.

2.     The plaintiff's claims against defendants Snyder, Carroll, McGuigan,

       Cunningham, Boyle, and Stevenson are dismissed with prejudice.

3.     The state defendants' Motion for a Protective Order (D.I. 48) is DENIED as moot.

4.     The plaintiff's Motion to Strike the Reply Brief (D.I. 58) is DENIED as moot.

Dated: November  1  , 2005

UNITED STATES DISTRICT JUDGE



FILED

NOV 1 2005

U.S. DISTRICT COURT
DISTRICT OF DELAWARE